Flynn, Appellee, *v.* McHugh et al., Appellants.

(No. 4809—Decided January 31, 1955.)

*Mr. John J. McCarthy,* for appellee.
*Mr. Joseph P. Sheehy,* for appellants.

Deeds, J. This is an appeal on questions of law and fact from a judgment of the Court of Common Pleas of Lucas County. The parties will be referred to herein as they appeared in the trial court, the plaintiff-appellee as plaintiff and the defendant-appellants as defendants.

The suit was commenced in the Court of Common Pleas as an action for the rescission and cancellation of a warranty deed. The cause has been submitted to this court for a review upon a transcript of the record and proceedings had in the Court of Common Pleas, including the pleadings, and also upon the evidence contained in the bill of exceptions and the arguments and briefs of counsel for the parties respectively.

It is alleged in substance in the petition of the

plaintiff that she was the owner of certain real estate as described and that plaintiff is a person of advanced years and of weakened physical condition and poor health; that the defendants are husband and wife and are the nephew and niece respectively of the plaintiff; and that for some time prior to June 12, 1953, plaintiff had discussed with the defendants the possibility of defendants moving into plaintiff's home in a separate apartment and entering into an agreement to perform certain services in connection with the premises.

Plaintiff alleged further that in consideration of the promises of the defendants to perform the various services, plaintiff agreed to transfer and convey her real estate as described to the defendants; that to accommodate the defendants, plaintiff had the property remodelled at a cost of $1,000; that on June 12, 1953, defendants came to the residence of the plaintiff with an attorney retained by the defendants; and that plaintiff, relying upon the representations of the defendants and believing them to be true, accepted defendants' offer to contract, and executed and delivered a warranty deed, thereby conveying said premises to the defendants, reserving to plaintiff a life estate in the real estate.

Plaintiff alleged further that the actions and conduct of the defendants were false and were for the purpose of defrauding plaintiff and of avoiding any obligation, consideration or value for the conveyance of the property; that at the time of the conveyance plaintiff and defendants enjoyed a confidential relationship of aunt and niece and nephew; and that defendants, by exercising such confidential relationship wrongfully and fraudulently, influenced plaintiff to convey the property described in the petition without any binding agreement by defendants to perform the services required of the defendants.

Plaintiff alleged further that following the execution and delivery of the deed to the defendants, the defendants refused to assist plaintiff with plaintiff's housekeeping and other services required under the agreement between the parties; that defendants threatened to evict plaintiff from her home; and that on or about November 23, 1953, defendant Thomas P. Mc-Hugh twisted the arm of plaintiff and threatened her with physical violence.

Plaintiff alleged that the deed executed and delivered to the defendants on June 12, 1953, is of no value and is without consideration; that defendants have entirely failed to perform the terms and conditions upon which the deed was to be based, executed and delivered; and that any consideration contemplated at the time of the execution and transfer has failed and the deed is wholly without consideration. By the prayer of her petition, plaintiff prays that the contract and deed be ordered to be delivered up and cancelled and that the title to the real estate be quieted in the plaintiff, and for such other and further relief as plaintiff may be entitled to in the premises.

The answer of the defendants admits the agreement to perform certain services for the plaintiff in consideration of the execution and delivery by plaintiff of the deed conveying the real estate described to the defendants and that defendants were to occupy an apartment in the property. Defendants deny that they were guilty of fraud or misrepresentation in securing a conveyance of the property from the plaintiff, and allege that the defendants have performed all the services required of them by the terms of their agreement with the plaintiff, except that after a period of about one month the plaintiff refused to co-operate with the defendants and has refused the acceptance of any services from the defendants, although the defendants have been ready, willing and able at all times

to perform fully the services which they undertook to perform by reason of the agreement. The defendants, by their answer, pray that the petition of the plaintiff be dismissed and that defendants recover their costs.

The warranty deed which appears in the record before us as an exhibit, the due execution of which has not been questioned or put in issue, recites $1 and other good and valuable considerations as being the consideration for the conveyance of the real estate described, and further excepts and reserves to the plaintiff as grantor an estate in the premises for and during her natural life.

The agreement between the parties concerning the services to be rendered by the defendants on behalf of the plaintiff was oral and no part of it was in writing. Consequently, it is necessary for the court to determine from the testimony in the record the terms of the agreement between the parties, which was a principal consideration for the execution and delivery of the deed by the plaintiff to the defendants.

The property in question consisted of a two-story frame building which was originally a residence and at the time of the transaction involved in the case had been converted into a four-family apartment dwelling. The plaintiff had been employed regularly for many years at the district nurse association in the city of Toledo and had acquired the property from her earnings, and had, prior to the transaction with the defendants, been occupying a lower apartment in the building, and on account of her age, being about eighty years, and infirmities, desired to have her nephew, the defendant Thomas P. McHugh, and his family occupy an apartment in the building for the purpose of performing certain services in the upkeep of the premises and in the event the plaintiff became disabled to also care for the plaintiff and perform the household services required in the maintenance of the apartment

occupied by the plaintiff. It was also agreed that the defendant Thomas P. McHugh was to pay the expenses incurred for gas in heating the premises, for electric current, water bills and taxes, and defendants were to mow the lawn, maintain the premises in reasonable repair, and, also, to meet the requirements of the other tenants occupying the premises; and plaintiff was to receive the rent paid by the two tenants occupying the remaining apartments.

It is undisputed that since July 1953, when the defendants and their three young children took possession of and have since occupied an apartment in the property, the defendant Thomas P. McHugh has paid the expenses for gas, electricity, water and the taxes; and it is also undisputed that he and his wife, the defendant Marianna K. McHugh, have rendered a great many other services for and on behalf of the plaintiff pursuant to the agreement between the parties. Further, the testimony of the defendants is to the effect that they have stood ready, able and willing to perform all the services which they undertook to perform under the agreement.

The principal evidence of the plaintiff as contained in the bill of exceptions in support of her claim that there has been a failure on the part of the defendants to perform the services required under the agreement is the testimony of the plaintiff that a certain stairway at the rear of the premises was allowed to be and remain out of repair by the defendant Thomas P. McHugh; that defendants failed to remove ashes or keep the basement of the premises clean; and that on one occasion, when plaintiff had visited the apartment of the defendants respecting the care defendants should give their children, the defendant Thomas P. McHugh twisted her arm with considerable violence so that she was unable to use it for a period of

about one month; all of which was denied by the defendants.

It appears further from the evidence in the record that the defendant Thomas P. McHugh since early childhood had suffered from a weakness in one of his legs and that the condition has continued throughout most of his life, he now being about thirty-five years of age, and that the plaintiff had affection for and was interested in and did furnish the defendant with help and assistance during his early childhood on account of his infirmity; and it is undisputed that plaintiff desired and intended that Thomas P. McHugh should have the property of the plaintiff after her death, but did not desire to make a will for the reason that it might, as plaintiff anticipated and expressed herself, be contested by other relatives. We also find from the evidence in the record that although the plaintiff did not have an attorney representing her in the transaction involved in the case, it is undisputed that the defendant Thomas P. McHugh asked the plaintiff if she desired an attorney to represent her in the transaction, and that the plaintiff indicated that she did not desire counsel, and also that attorney Joseph P. Sheehy, with whom all the parties were acquainted, was agreeable to the plaintiff.

We find no evidence of any substantial weight that the plaintiff did not know and understand fully that she was executing and delivering her warranty deed conveying the premises in question to the defendants and reserving to herself a life estate in the property. It is also clear without dispute that it was the desire and intention of the plaintiff that her nephew Thomas P. McHugh should have the real estate involved in the action after the plaintiff's decease and that the only question was concerning the best manner in which that desire could be carried out by the plaintiff.

We therefore find and hold that the evidence in the record before us is insufficient to support either the charge of fraud, mistake, or that there is a failure of consideration and, therefore, that the evidence is not sufficient to warrant a rescission or cancellation by the court of the deed in question.

There is no evidence in the record concerning the reasonable rental value of the apartment occupied by the defendants and their three young children, nor is there any evidence showing the aggregate amount being paid by the defendants, represented by gas presumably used in heating all of the apartments, electricity, water and taxes; consequently there is a total lack of evidence upon which the court might otherwise be warranted in granting relief to the plaintiff as representing damages or as a reimbursement to plaintiff for expense incurred for the rendition of services which should have been performed by the defendants. There is likewise no evidence in the record tending to show the reasonable value of the services which it is claimed defendants failed to perform.

The undertaking was obviously destined to be for the advantage of, and was designed to meet the needs and personal requirements of both the plaintiff and the defendants, although fraught with certain natural risks and mutual obligations which the parties were bound to consider before entering upon the venture, as they were all of full age, sound mind, and not strangers but well-acquainted and on friendly relations. We are impressed from the evidence that the defendant Marianna K. McHugh did and stood ready to perform all the services required to be performed by the defendants under the agreement, notwithstanding she was not conversant with the terms of the agreement.

It is also our view of the evidence in the record that

the defendant Thomas P. McHugh by his conduct and attitude afforded a basis for justifiable criticism and complaint on the part of the plaintiff, and particularly is this true in view of the advanced age of the plaintiff and her physical infirmities, concerning which the defendant was fully aware when he undertook the performance of the obligations under the arrangement as agreed upon, and that with the exercise of greater patience and more consideration on the part of that defendant a greater degree of harmony may have been possible and the present litigation may have thereby been rendered unnecessary. We are also impressed by the absence of a written agreement between the parties which may have been the means of preventing controversy and misunderstanding between them. However, we do not find sufficient evidence in the record now before us to warrant the granting of any specific legal or equitable relief and for that reason must hold that the petition of the plaintiff should be dismissed and that judgment be entered for the defendants.

We reach the foregoing conclusion on the record in the case before us by reason of the rules of law applicable to the issues presented, as announced clearly in decisions by the Supreme Court of the state.

In the comparatively early decision of the Supreme Court in the case of *National Bank* v. *Wheelock,* 52 Ohio St., 534, 40 N. E., 636, the court in the opinion at page 550 stated concerning the degree of proof required to warrant the cancellation of a deed, the following:

"It is the settled policy of the state, as indicated by a uniform course of practice in its courts, and by repeated decision of this court, that instruments of this solemn character, executed in conformity to the provisions of the deeds act, shall not be set aside or de-

feated of their natural purpose, except upon proper allegations which are supported by evidence of a clear and convincing character. The mere preponderance of evidence, which is sufficient to determine the verdicts of juries in civil actions, is not sufficient.''

In a later decision of the Supreme Court, in the case of *McAdams* v. *McAdams*, 80 Ohio St., 232, 88 N. E., 542, in which the facts are in many respects analogous to the facts in the case now before this court, the syllabus is as follows:

''1. In an action by the grantor in a deed, to reform the instrument upon the ground that the grantee fraudulently concealed and misstated the contents of the deed to the grantor, when it appears that the grantee is a son of the grantor and an attorney at law, and that such grantee was entrusted with the drafting of the instrument upon his own suggestion, such facts raise a presumption of the existence of relations of trust and confidence between the parties and put upon the grantee the burden of showing that no undue advantage was taken of the grantor in the execution of the deed.

''2. But when it is also clearly apparent in such case that such deed is in apparent accord with previous declarations of the grantor as to his intentions and his subsequent declarations as to what he had done, and that he could read and had ample opportunity before, at, and after, signing the deed to read the same, the presumption of undue advantage by reason of confidential relations is rebutted, and the burden rests upon the grantor to show by clear and convincing proof that the deed is fraudulent.

''3. In such case declarations of the grantor, made in the absence of the grantee, are not competent evidence to prove the alleged fraud; but statements of the grantor which tend to rebut the claim of fraud,

whether made before or after the signing of the deed, are admissible.''

Also, in the case of *Kroeger, Supt.,* v. *Brody,* 130 Ohio St., 559, 200 N. E., 836, a statement from the opinion of the court at page 566 is in our view pertinent to the situation of the plaintiff as shown by the evidence in the case now before this court:

''Ordinarily, one of full age in the possession of his faculties and able to read and write, who signs an instrument and remains acquiescent to its operative effect for some time, may not thereafter escape the consequences by urging that he did not read it or that he relied upon the representations of another as to its contents or significance. Or as Judge Davis remarks in *McAdams* v. *McAdams,* 80 Ohio St., 232, 240, 88 N. E., 542, 544: 'A person of ordinary mind can not be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed.' ''

In the case of *City of Cleveland* v. *Herron,* 102 Ohio St., 218, 131 N. E., 489, the rule of law in this state applicable to the evidence in the case before us is in our view stated in the syllabus of the decision:

''1. The equitable relief of cancellation and rescission of a deed conveying real estate will not be granted for a mere breach of contract.

''2. Failure of the grantee to perform a promise which formed the whole or part of the consideration for the execution of a conveyance gives rise to no right of rescission in the grantor, where such failure was not expressly made a ground of forfeiture.''

See, also, *Cross* v. *Ledford,* 161 Ohio St., 469, 120 N. E. (2d), 118.

It is significant in the case before us that the deed involved and which was executed by the plaintiff con-

tained no condition for forfeiture or any other condition affecting in any way the validity of the instrument conveying the estate in remainder to the defendants. Since the instrument was also free from any ambiguity or uncertainty, it, therefore, can not be declared invalid except upon evidence which meets the requirement of the settled law in this state, which is that it must be both clear and convincing. Nevertheless by reserving to herself a life estate in the premises, the plaintiff is entitled to the enjoyment of all the benefits of a life tenant.

In our view, the relationship of the parties respecting the title, ownership and the future control and possession of the property has been stated clearly by the Supreme Court in the opinion in the case of *Brock* v. *Gregg, Assignee,* 63 Ohio St., 289, 299, 58 N. E., 818, as follows:

"Or in other words, had the Probate Court jurisdiction to adjudicate as to the rights and liabilities of Mrs. Brock? She has a life estate in the land and her son has an estate in remainder in the same land. Her estate is separate and independent of his. It is not a right in the land like unassigned dower, but is an estate by itself. Her estate must end before his can begin as an estate in possession. While his estate is vested, the beneficial interest as an estate in possession must await the extinction of her estate. The two estates are to be enjoyed, not at the same time, but in succession, hers first, his afterward. His estate passed by his deed of assignment to his assignee, to be administered under the jurisdiction and orders of the Probate Court. Her estate remained in herself, subject to the mortgage lien upon it in favor of Mr. Houston. Her estate is not a lien on his; neither is his a lien on hers."

Concerning the claim of a want of consideration

made by the plaintiff in her petition, we deem it unnecessary to make comment except to state the well-established general rule applicable, which is that courts will not undertake to find or determine the question of the adequacy of consideration supporting a contract or deed if it appears that there was any good or valuable consideration which passed from and between the contracting parties.

The claim of the plaintiff respecting a failure of consideration in the case before us likewise is untenable as not being supported by the evidence when the settled law applicable to that claim is given consideration. The general rule in the state is stated in 13 Ohio Jurisprudence, 865, Deeds, Section 51, as follows:

"The rule that a mere failure of consideration, if not combined with fraud or bad faith, is not sufficient to warrant cancelation of an executed contract, is applicable where the rescission of a deed is sought on the ground of failure of consideration, even where the title is defective, if the vendee is protected by a warranty deed, though an entire failure of title to a material portion of the land attempted to be conveyed is ordinarily a good ground for rescission."

Also, we find the law generally in the nation on the subject to be stated in 26 Corpus Juris Secundum, 195, 196, Section 21, as follows:

"As a general rule a deed which is otherwise valid will not be invalidated by reason of a total or partial failure of consideration, and will nevertheless operate to convey title.

"While it has been recognized that failure of consideration for a conveyance is sufficient ground to warrant a rescission, at least where it is total, as a general rule a deed which is otherwise valid will not be invalidated by reason of a total or partial failure

of consideration, and will nevertheless operate to convey title. So, in the absence of statutory authorization, or an express provision for a forfeiture or reconveyance, a deed will not be avoided or canceled because the consideration agreed on is not paid, or because the grantee fails to perform a promise forming the whole or part of the consideration therefor; nor will failure to perform such a promise ordinarily give rise to a lien or charge against the land; nor is a party entitled to have his deed set aside and canceled simply because he has not received the full consideration.''

The right of the possession and full use and enjoyment of one holding the life estate in real property is stated in 16 Ohio Jurisprudence, 434, Estates, Section 50:

''The tenant for life is entitled to the full use and possession of the property; the only restriction upon this use being that the estate of those who are to follow him in possession shall not be permanently diminished in value by his neglecting to do that which an ordinarily prudent person would do in the preservation of his own property, or by doing those things which are not necessary to the full enjoyment of the particular estate and which have the effect permanently to diminish the value of the future estate.''

Therefore it appears, although unnecessary for decision here and we do not undertake to determine the future relation of the parties, the right of the defendants to the possession and use of the apartment occupied by them will be dependent upon the performance by the defendants, or their readiness and ability to so perform, the services which they are obligated to render the plaintiff by virtue of the agreement under which the defendants came into possession of the apartment, otherwise the plaintiff would be entitled to redress against the defendants as tenants in accord

with all of the appropriate remedies provided either by law or in equity.

It is a well-established policy of courts of equity that they seldom if ever will undertake to supervise the future conduct of parties in reference to an agreement, such as has been shown to exist by the evidence, in the case now before the court, nevertheless this court can not avoid the impression, considering the relationship of the parties, that an amicable adjustment would be very much to their mutual advantage.

For the reasons stated, judgment will be entered herein for the defendants.

*Judgment for defendants.*

FESS and CONN, JJ., concur.