BLUE ASH BUILDING & LOAN COMPANY, APPELLEE, *v.* HAHN, EXECUTOR, ET AL., APPELLANTS.

(No. C-830743—Decided July 25, 1984.)

*Robert P. Mecklenborg,* for appellee.
*James M. Schnell & Associates* and *Jack F. Grove,* for appellants.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County, Ohio.

On July 27, 1972 and January 5, 1973, mortgagors, John C. Hahn and Margaret C. Hahn (then husband and wife), executed two different mortgage agreements on distinct pieces of Butler County property in favor of mortgagee, Blue Ash Building and Loan Company (B.A.B. & L.). The mortgage agreements were executed by John and Margaret Hahn at B.A.B. & L.'s offices in Hamilton County, Ohio. Each mortgage contains a clause under which the mortgagors' obligations to pay off the promissory notes secured by the mortgages are accelerated upon the happening of certain conditions. The clauses (hereinafter referred to as the "acceleration of payment clauses"),[1] which are identical in each mortgage, state as follows:

"And further that if there shall be *any change in the ownership of the premises* herein described without the consent of said mortgagee or in case of default in making any of said monthly payments for a period of sixty days after becoming due, then the unpaid balance of principal and all accrued interest shall become due and payable at the election of said mortgagee and foreclosure proceedings may be instituted thereon." (Emphasis added.)

On January 5, 1982 John Hahn and Lorna Hahn, as husband and wife, executed land installment contracts with defendant Terry P. Staton, Trustee, on the mortgaged property.[2] Under the terms of the contracts, Staton agreed to fulfill certain obligations, including making installment payments to the Hahns for a number of years. During the period when these payments were to be made, the Hahns would continue to hold legal title to the subject pieces of property. The Hahns agreed to convey title to the property to Staton only upon the fulfillment of Staton's obligations under the terms of the contracts.

After learning that the Hahns had agreed to sell the mortgaged property under two land installment contracts, B.A.B. & L. (plaintiff-appellee herein) filed a complaint in Hamilton County Common Pleas Court seeking declaratory relief against defendants John C. Hahn, both personally and in his capacity as executor of Margaret Hahn's estate, Lorna Hahn, and Terry Staton, Trustee. B.A.B. & L. sought to have the court below determine that within the meaning of the acceleration of payment clauses of the mortgage agreements, the Hahns' sale of the mortgaged property by land installment contracts, during the period of time when all the contracts' terms had yet to be fulfilled, constituted a "change in the ownership of the premises." Under B.A.B. & L.'s interpretation of its mortgage agreements with John and Margaret Hahn, the vendee of a land installment contract succeeds to *some* form of ownership over the property upon execution of the contract, and does not become an owner of the property only upon passage of legal title from the vendor.

John and Lorna Hahn initially responded to B.A.B. & L.'s complaint with a motion for change of venue, contending that since the subject property was located in Butler County and all defendants were residents of Butler County, the action was improperly venued in Hamilton County. The court below denied the motion for change of venue and John and Lorna Hahn filed a counterclaim and an answer to the complaint. In their answer the Hahns assert a number of defenses, all of which essentially contend either that the mere ex-

---

[1] This type of clause is also commonly referred to as a "due on sale clause."

[2] Between the time that the mortgage agreements with B.A.B. & L. were executed and the land installment contracts were entered into, Margaret C. Hahn died and John C. Hahn married Lorna.

ecution of a land installment contract, prior to the transfer of legal title, does not result in "any change in the ownership" of the subject property, or that the instant mortgages' acceleration of payment clauses should be held invalid. The Hahns' counterclaim affirmatively seeks declaratory judgment in their favor by merely restating the above defenses.

Pursuant to Civ. R. 12(C), both B.A.B. & L. and John and Lorna Hahn moved the court to grant judgment *on the pleadings* in their favor. The court below erroneously responded with an "entry on motions for *summary judgment*" (emphasis added). In its entry the court below granted "summary judgment" in B.A.B. & L.'s favor and denied summary judgment as to John and Lorna Hahn. The court corrected its erroneous disposition of the case by its subsequent judgment entry granting B.A.B. & L.'s motion for "judgment on the pleadings" and denying the Hahn's motion for "judgment on the pleadings." It is from this ruling that John and Lorna Hahn appeal.

The Hahns assert three assignments of error with respect to the actions of the court below. The first assignment concerns whether the Hahns' motion for change of venue from Hamilton County to Butler County should have been granted. The Hahns contend that since all defendants are residents of Butler County, the property at issue is located in Butler County, and the land installment contracts between the Hahns and Terry Staton were executed in Butler County, the only proper place for this ac-

tion to be venued is Butler County. Appellants' argument fails, however, because under Civ. R. 3(B)(3) and 3(E), venue is proper in Hamilton County since John and Margaret Hahn's execution of the mortgage agreements with B.A.B. & L. took place in Hamilton County. The execution of the mortgages clearly is one of the activities defendant John Hahn engaged in which gave rise to B.A.B. & L.'s claim for relief against him. Accordingly, the first assignment of error is overruled.

In their second assignment of error John and Lorna Hahn claim that the trial court erred in overruling their motion for judgment on the pleadings. The thrust of their argument is that sale of the subject property under a land installment contract does not result in any change of ownership of the property until the vendor transfers legal title to the property to the vendee. It must be emphasized that the acceleration of payment clause in the instant case is triggered upon *any* change in the ownership of the premises. We agree with the Hahns' contention that Staton will not take legal title to the subject property until he has performed all his obligations under the land installment contracts.[3] However, Staton has succeeded to some form of ownership over the property by virtue of his entrance into the land installment contracts and his performance of some of the obligations thereunder (*e.g.,* payment of periodic installment payments to satisfy his obligation for the purchase price of the property). The passage of legal title is not the only

---

[3] R.C. 5313.01 sets forth the following definition:

"As used in Chapter 5313 of the Revised Code:

"(A) 'Land installment contract' means an executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation. Option contracts for the purchase of real property are not land installment contracts."

means to bring about *any* change in ownership.

In a comment comparing the nature of mortgages and land installment contracts under California law, the author explains the interest of a vendee of a land installment contract as follows:

"The vendee obtains an equitable estate entitling him generally to all the incidents of ownership. The vendee has the right to use the property free from interference of the vendor and is not impeachable for waste unless the security of the vendor becomes impaired. His interest is alienable and is subject to taxation, and the debtor-vendee has no statutory right of redemption." Comparison of California Mortgages, Trust Deeds and Land Sale Contracts (1960), 7 U.C.L.A. L. Rev. 83, 96-97.

Until the vendee has performed all his obligations under the contract and has attained legal title to the property, he does not stand as sole owner of the property. However, he does stand as an equitable owner of the property with the obligations and incidents of ownership attendant to possession of the property.

The term "owner" is defined as follows:

"Owner. The person in whom is vested the ownership, dominion, or title of property; proprietor. * * *

"* * * The primary meaning of the word as applied to land is one who owns the fee and who has the right to dispose of the property, but the term also includes one having a possessory right to land or the person occupying or cultivating it." Black's Law Dictionary (5 Ed. 1979) 996.

Likewise, Black's Law Dictionary defines "equitable owner" as:

"One who is recognized in equity as the owner of property, because the real

and beneficial use and title belong to him, although the bare legal title is vested in another, *e.g.*, a trustee for his benefit. One who has a present title in land which will ripen into legal ownership upon the performance of conditions subsequent. There may therefore be two 'owners' in respect of the same property, one the nominal or legal owner, the other the beneficial or equitable owner." *Id.*

In an analogous situation, where seller and purchaser have entered into a contract for the sale of land (not a land installment contract), but legal title has yet to pass from seller to purchaser, the purchaser's interest has been explained as follows:

"The purchaser's interest under an enforceable contract is treated as real property for many purposes under the principles of equitable conversion. He is regarded in equity as the owner, with the legal title held in trust for him. His position is similar to that of a mortgagor, especially where the mortgagee holds the legal title." 3 McDermott, Ohio Real Property Law and Practice (3 Ed. 1966) 393, Section 28-22A.

In conformity with our determination that the vendee of a land installment contract stands as an equitable owner of property sold under the contract, we hold that there was a "change in ownership" of the property which is the subject matter of this case when John and Lorna Hahn entered into their land installment contracts with Staton.[4] Accordingly, the court below properly determined that the acceleration of payment clauses in B.A.B. & L.'s mortgages with the Hahns were triggered by the execution of the land installment contracts. The second assignment of error is overruled.

---

[4] We note somewhat apposite subject matter in *Great Northern Savings Co.* v. *Ingarra* (1981), 66 Ohio St. 2d 503 [20 O.O.3d 415], in which the Supreme Court was presented with the issue we here face. However, the court disposed of the case on other grounds.

A verbatim replication of appellants' third assignment of error and issue presented for review thereunder follows:

"THIRD ASSIGNMENT OF ERROR

"The trial court erred in granting summary judgment for appellee on a motion for judgment on the pleadings.

"ISSUE PRESENTED FOR REVIEW

"A trial court may not treat a motion for judgment on the pleadings as a motion for summary judgment and thereby deprive the party opposing the motion an opportunity to litigate his defenses and to develope [sic] a factual record."

As we noted earlier, the court below corrected its mistake of treating appellee's (B.A.B. & L.'s) and appellants' (John and Lorna Hahn's) motions for judgment on the pleadings as motions for summary judgment. It did so by filing a later judgment entry which granted appellee's motion for judgment on the pleadings and which denied appellants' motion for judgment on the pleadings. We are, therefore, left to determine whether the trial court properly granted B.A.B. & L.'s Civ. R. 12(C) motion for judgment on the pleadings.

In considering a motion for judgment on the pleadings, the trial court is required to view the facts presented in the pleadings alone, and the inferences to be drawn therefrom, in the light most favorable to the non-moving party. The motion should be granted only if the movant, here B.A.B. & L., establishes that no material issue of fact awaits resolution and that it is entitled to judgment as a matter of law. See *Peterson* v. *Teodosio* (1973), 34 Ohio St. 2d 161 [63 O.O.2d 262]; *Conant* v. *Johnson* (1964), 1 Ohio App. 2d 133 [30 O.O.2d 157]; *Alken*

v. *Lerner* (D.N.J. 1980), 485 F. Supp. 871.

In reviewing the trial court's decision to grant B.A.B. & L.'s motion for judgment on the pleadings, we review whether any material issues of fact were raised by B.A.B. & L.'s complaint[5] and John and Lorna Hahn's answer and counterclaim. The viability of the Hahns' answer and counterclaim relies in part on an interpretation of the mortgages' acceleration of payment clauses in which the sale of the subject property under a land installment contract does *not* constitute a change in ownership of the property. Our resolution of appellants' second assignment of error determines as a matter of law that the sale of property under a land installment contract results in a change of ownership of the property.

In the remainder of their answer and counterclaim, the Hahns urge that the acceleration of payment clauses should be held invalid because essentially they are illegal, unconscionable, inequitable, and serve no valid purpose. On this issue, we find persuasive the following language from *People's Savings Assn.* v. *Standard Industries* (1970), 22 Ohio App. 2d 35, 38 [51 O.O.2d 43]:

"Defendant-appellant argues that public policy makes the provision for acceleration based on change of ownership void *ab initio* and that this court should so hold. Acceleration clauses in mortgages are not new in Ohio. See 37 Ohio Jurisprudence 2d 268, Mortgages, Section 80. See, also, *Nixon* v. *Buckeye Building & Loan Co.* (1934), 18 Ohio Law Abs. 261. In *Coast Bank* v. *Minderhout*, 61 Cal. 2d 311, 392 P. 2d 265, Justice Traynor, in a thorough opin-

---

[5] Under Civ. R. 10(C), which states that "[a] copy of any written instrument attached to a pleading is a part thereof for all purposes," the copies of the mortgages and land installment contracts attached to the complaint are considered to be part of the pleadings.

ion, held that a similar provision is a reasonable restraint designed to protect justifiable interests of the parties. We concur, and hold that a significant element in the mortgage contract is the mortgagor himself, his financial responsibility and his personal attitudes. The right of the mortgagee to protect its security by maintaining control over the identity and financial responsibility of the purchaser is a legitimate business objective and is not illegal, inequitable or contrary to the public policy of the state of Ohio." See, also, Annotation (1976), 69 A.L.R. 3d 713, 727.

The trial court was correct in determining that no issues of material fact were raised by the pleadings and that B.A.B. & L. was entitled to judgment as a matter of law. Appellants' third assignment of error is not well-taken.

All of appellants' assignments of error having been overruled, we affirm the judgment of the court below.

*Judgment affirmed.*

KEEFE, P.J., DOAN and KLUSMEIER, JJ., concur.